| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**Otterbourg P.C.**<br>230 Park Avenue<br>New York, New York 10169<br>(212) 661-9100<br>John Bougiamas, Esq. (Bar No. 044651992)<br>Jonathan N. Helfat, Esq. (*pro hac vice* pending)<br>Michael Wenger, Esq. (*pro hac vice* pending)<br>Matthew J. Stockl, Esq. (*pro hac vice* pending)<br><br>*Counsel to Milberg Factors, Inc.* | |
| In re:<br><br>E&M BINDERY, INC.,<br><br>Debtor.[1] | Chapter 11 (Subchapter V)<br>Case No. 25-22444 (SLM)<br><br>**Hearing Date and Time:**<br>December 9, 2025, at 11:00 a.m. (EST) |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF MILBERG FACTORS, INC. TO DEBTOR'S MOTION SEEKING ENTRY OF AN ORDER AUTHORIZING DEBTOR TO ENTER INTO A TRANSITION AGREEMENT WITH BIND-RITE SERVICES, INC.

Milberg Factors, Inc. ("Milberg"), by and through its attorneys, Otterbourg P.C., respectfully submits this Limited Objection and Reservation of Rights to the *Debtor's Motion Seeking Entry of an Order Authorizing Debtor to Enter Into a Transition Agreement with Bind-Rite Services, Inc.* [Docket No. 41] (the "Motion") filed by E&M Bindery, Inc. (the "Debtor"), and states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 4866. The Debtor's corporate headquarters are located at 11 Peekay Drive, Clifton, New Jersey 07014.

1

8686760.2

## INTRODUCTION

1. The Debtor seeks Court authority to enter into a Transition Agreement ("TSA") with Bind-Rite Services, Inc. ("Bind-Rite") pending the proposed sale of certain of the Debtor's assets to Bind-Rite (the "Sale") pursuant to the *Debtor's Motion Seeking Entry of an Order Approving the Private Sale of Debtor's Business, Customer Lists, and Certain Specified Equipment to Bind-Rite Services, Inc.* [Docket No. 21] (the "Sale Motion"). According to the Motion, the TSA "provides a mechanism for Debtor to refer its customers to Buyer in exchange for payment of consideration to Debtor during the brief period between approval of the TSA and a closing upon the proposed private sale to Buyer." (Mot. ¶ 1.) The TSA would cover an approximately 1-week period between approval of the TSA and approval of the Sale to Bind-Rite.

2. Milberg does not oppose the Sale at this time but it is unclear what purpose, if any, is served by the TSA. On December 7, 2025, Debtor's counsel circulated an updated asset purchase agreement ("APA") between Debtor and Bind-Rite. As set forth in the APA, the Sale is not a going concern sale of substantially all of the Debtor's assets. Rather, the Sale is limited to customer lists and certain equipment. Based on the lack of clarity regarding the purpose of the TSA and what "transition" is contemplated thereby, the fact that the APA does not require the TSA, and that the TSA does not appear necessary under these circumstances, Milberg objects to approval of the TSA.

3. Milberg is engaged in active negotiations with the Debtor regarding the final order approving the Sale Motion ("Sale Order"). Milberg is, at this time, supportive of the relief sought in the Sale Motion, but has raised certain comments and issues with respect to the proposed sale, which issues have not been addressed to date. As such, Milberg reserves its rights in all respects and to the fullest extent with regards to the TSA, the revised APA, any final Sale Order, and any

other sale documents entered into between the Debtor and Bind-Rite.

## BACKGROUND

**A.     The Bankruptcy Case**

4.     On November 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court" or this "Court"). The Debtor continues to operate its businesses and manage its properties as debtor in possession pursuant to Bankruptcy Code sections 1183 and 1184.

5.     On December 2, 2025, the U.S. Trustee filed the *Notice of Appointment of Subchapter V Trustee* [Docket No. 44], appointing Scott S. Rever to act as Subchapter V Trustee (the "Subchapter V Trustee").

**B.     Prepetition Lending Relationship**

6.     Prior to the commencement of the Debtor's chapter 11 case, the Debtor and Milberg entered into certain secured financing arrangements pursuant to which, among other things, the Debtor assigned its accounts receivable to Milberg and Milberg provided credit and other accommodations to the Debtor in accordance with the terms of the following loan documents (collectively, the "Loan Documents"): (a) Security Agreement (Accounts Receivable — Financing) dated as of October 21, 1998 (as amended, the "Financing Agreement"), a copy of which is attached hereto as Exhibit A; (b) Security Agreement—Goods and Chattels dated October 21, 1998, a copy of which is attached hereto as Exhibit B; (c) Security Interest in Inventory under Uniform Commercial Code Supplement to Security Agreement (Accounts Receivable - Financing) Contract dated October 21, 1998, a copy of which is attached hereto as Exhibit C; (d) amendment to Financing Agreement dated August 10, 2007, a copy of which is

attached hereto as <u>Exhibit D</u>; (e) amendment to Financing Agreement dated August 31, 2007, a copy of which is attached hereto as <u>Exhibit E</u>; (f) amendment to Financing Agreement dated January 8, 2009, a copy of which is attached hereto as <u>Exhibit F</u>; (g) amendment to Financing Agreement dated April 1, 2015, a copy of which is attached hereto as <u>Exhibit G</u>; and (h) amendment to Financing Agreement dated February 12, 2016, a copy of which is attached hereto as <u>Exhibit H</u>.

7. As set forth in the Loan Documents, the Debtor granted Milberg a security interest in substantially all of its assets, including Receivables[2] and all general intangibles, machinery, goods, furniture, fixtures and equipment, and Inventory (the "<u>Collateral</u>").

8. Milberg filed UCC-1 financing statements pursuant to the Financing Agreement to perfect its lien on the Collateral, including: (a) UCC-1 financing statement filed on November 16, 1998 as document number 01870893 with the New Jersey Department of Treasury UCC Section naming Milberg Factors, Inc. as the secured party and E & M Bindery, Inc. as the debtor thereunder, along with timely filed continuation statements filed on June 16, 2003; July 17, 2008; July 18, 2013; June 21, 2018; and June 27, 2023; (b) UCC-1 financing statement recorded on October 30, 1998 as document number 1T07340/FS074204 with the Passaic County clerk's office; and (c) UCC-1 financing statement filed on May 29, 2003 as document number 21616297 with the New Jersey Department of Treasury UCC Section naming Milberg Factors, Inc. as the secured party and E & M Bindery, Inc. as the debtor thereunder, along with timely filed continuation statements filed on December 21, 2007; January 14, 2013; December 12, 2017; and January 5,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Documents.

8686760.2

2023. The UCC-1 financing statements and continuation statements are attached hereto as group Exhibit I.

9. In accordance with the terms of the Loan Documents and duly filed UCC-1s, Milberg is secured by, among other things, perfected first priority liens on and security interests in substantially all of the Debtor's assets.

10. As of the Petition Date, the Debtor was indebted to Milberg under the Loan Documents in an aggregate outstanding principal amount of not less than $828,000.00, plus all interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and all other obligations accrued, accruing or chargeable in respect thereof or in addition thereto.

**C.     Sale Motion**

11. On November 24, 2025, the Debtor filed the Sale Motion seeking, among other things, approval of the APA and the sale of customer lists and certain equipment to Bind-Rite for the purchase price of $567,000. The Sale Motion is scheduled for hearing on December 16, 2025.

**OBJECTION**

12. The Debtor has not articulated a sound business purpose for approving the TSA in connection with the Sale or why a 3% referral fee is appropriate under the circumstances. "To approve a sale of estate assets outside of the ordinary course of business under section 363(b) of the Bankruptcy Code, the sale proponent bears the burden of demonstrating, at minimum, that: (1) there is a sound business purpose for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith." *In re Diocese of Camden*, 653 B.R. 722, 740 (Bankr. D.N.J. 2023).

13. Pending approval of the Sale, the TSA contemplates Debtor referring customers to Bind-Rite in exchange for a 3% payment fee following Bind-Rite's receipt of full payment on the referred order. It is unclear what purpose would be served by the TSA during the short 1-week period it would cover. According to *Certification of Gary Markovitz in Support of the Debtor's Application for Approval of Transition Agreement* [Docket No. 49] (the "Certification"), "Debtor is not wholesale referring its customers to Buyer prior to this Court's approval of the Sale. Rather, pending Court approval of the Sale, Debtor is seeking to keep all of its customers' jobs 'in-house' to the extent of Debtor's capacity to timely handle same. Prior to obtaining such Court approval Debtor is only referring work to Buyer that Debtor cannot timely and properly handle 'in-house'." (Cert. ¶10.) However, the Certification contains no information regarding which jobs are being kept "in house" or the number of jobs being referred to Bind-Rite or the value of any those jobs.

14. Significantly, entry into the TSA is not required by the APA and there is no clarity on what "transition" services are being offered under the TSA. In short, the Debtor has not articulated a sound business purpose for entering into the TSA. The Debtor failed to meet its burden and, therefore, the Motion should be denied.

## CONCLUSION

For the reasons set forth above, Milberg respectfully objects to the Motion, requests that the Court deny approval of the TSA, and reserves its rights to be heard on all issues as stated herein.

Dated: December 8, 2025

                                              */s/ John Bougiamas*
                                              John Bougiamas, Esq. (Bar No. 044651992)

                                              **OTTERBOURG P.C.**
                                              John Bougiamas, Esq.
                                              Jonathan N. Helfat, Esq. (*pro hac vice* pending)

8686760.2

Michael Wenger, Esq. (*pro hac vice* pending)
Matthew J. Stockl, Esq. (*pro hac vice* pending)
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Email: jbougiamas@otterbourg.com
          jhelfat@otterbourg.com
          mwenger@otterbourg.com
          mstockl@otterbourg.com

*Counsel to Milberg Factors, Inc.*